UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                              CRIMINAL ACTION NO. 2:11-00109

DAVID LEE WALLACE

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are defendant's motions (1) to compel disclosure of identities of confidential informants ("motion to compel") and (2) to suppress.

On June 16, 2011, the court conducted a pretrial motions hearing respecting defendant's motion to suppress. During the hearing, defense counsel raised the identity issues found in his motion to compel.  The hearing was attended by William B. King, II, Assistant United States Attorney, on behalf of the United States, and defendant, who appeared in person and by his counsel David R. Bungard, Assistant Federal Public Defender.

I.

In his motion to compel, defendant seeks an order directing the United States to disclose the name and contact

information for a certain confidential informant or informants who assisted the Metro Drug Task Force ("MDENT") with this case. He notes that information provided by one or more confidential informants was relied upon by MDENT to support an April 8, 2011, search warrant for the defendant's black duffel bag ("search warrant information"). He further notes that an MDENT member received information from a confidential informant that two African-American males would be arriving in Charleston on April 8, 2011, by Greyhound bus while carrying a quantity of heroin or prescription pills ("drug courier information").

It is further noted that a confidential source ("source") was present with law enforcement on April 8, 2011, reportedly watching passengers disembark at the Greyhound bus terminal in Charleston. The source remarked to an MDENT member on that occasion that defendant was a frequent traveler from Detroit, Michigan, to Charleston ("frequent traveler information").

Defendant seeks the identity of the source based upon his assertion that MDENT was relying entirely on the individual to personally identify anyone who might be a suspected drug courier. He seeks to contact the source to verify the information which the source relayed to law enforcement on April

2

8, 2011.  He also asserts that he must learn how the informant recognized him, as well as the basis for the informant's knowledge that he was a frequent traveler from Detroit to Charleston.

Defendant also suggests that "[t]he informant could possibly become a defense witness at a suppression hearing in the event that the informant disputes the accounted version of his/her information to" law enforcement.  (Mot. to Compel at 3). The precise reason for the request appears to be based upon the conclusion that "[w]ithout the . . . [source's] information, . . . [law enforcement] would have no legal basis to have ordered . . . an investigative stop of the defendant."  (Id.).

During the June 16, 2011, hearing, an issue arose respecting the identity and information provided by the source. The court excused those present in the courtroom, including defendant and his counsel, in order to hear the United States in camera respecting the identity of the source and his or her knowledge of the events in this case.

The United States called Lieutenant Chad Napier during the in camera portion of the hearing.  Lieutenant Napier is a law enforcement officer familiar with the source's assistance.

3

According to Lieutenant Napier, the source has worked with law enforcement since March 2009.  The source provides frequent and "extremely reliable" information.  The source also contacts law enforcement with tips as often as four or five times per week depending upon the circumstances.

Lieutenant Napier described the source as a "key piece" in the drug interdiction efforts in the area.  His or her identity has remained shielded for the nearly two-and-one-half years that he or she has rendered assistance to law enforcement.

Lieutenant Napier testified that the disclosure of the source's identity will hinder, but likely not halt, any future assistance rendered by the source.  Lieutenant Napier further testified that it was "possible" the source's safety could be jeopardized if his or her identity is revealed.

Lieutenant Napier conceded the possibility that the source may have witnessed events that transpired at the bus terminal on the day that defendant was apprehended.  He later twice clarified that the source "could have seen the whole" incident leading up to and including defendant's apprehension by law enforcement.

4

Prior to the court hearing the aforementioned <u>in</u> <u>camera</u> matter, defense counsel suggested that the source "may have actually been an eyewitness to the physical stop" of defendant accomplished by law enforcement on April 8, 2011. Defense counsel further surmised that the source may constitute "a crucial fact witness" concerning the circumstances surrounding the pursuit and apprehension of defendant.

II.

In <u>Roviaro v. United States</u>, 353 U.S. 53, 64–65 (1957), the Supreme Court observed as follows:

> What is usually referred to as the informer's privilege
> is in reality the Government's privilege to withhold
> from disclosure the identity of persons who furnish
> information of violations of law to officers charged
> with enforcement of that law. The purpose of the
> privilege is the furtherance and protection of the
> public interest in effective law enforcement. The
> privilege recognizes the obligation of citizens to
> communicate their knowledge of the commission of crimes
> to law-enforcement officials and, by preserving their
> anonymity, encourages them to perform that obligation.

<u>Id.</u> at 59 (internal citations omitted). The Supreme Court went on to note that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." <u>Id.</u>

5

at 60-61.  The analysis here hinges upon the balancing test

identified in Roviaro:

> We believe that no fixed rule with respect to
> disclosure is justifiable. The problem is one that
> calls for balancing the public interest in protecting
> the flow of information against the individual's right
> to prepare his defense. Whether a proper balance
> renders nondisclosure erroneous must depend on the
> particular circumstances of each case, taking into
> consideration the crime charged, the possible defenses,
> the possible significance of the informer's testimony,
> and other relevant factors.

Id. at 62.

        In performing the required balancing analysis, our

court of appeals, in United States v. D'Anjou, 16 F.3d 604, 609

(4th Cir. 1994), observed that the court should consider the

circumstances of the case, including (1) the crime charged, (2)

the defendant's possible defenses, (3) the possible significance

of the informer's testimony, and (4) any other relevant factors.

In an earlier decision, the court of appeals further noted that

defendant bears the burden of demonstrating the necessity of

disclosure and must "come forward with something more than

speculation as to the usefulness of such disclosure."  United

States v. Smith, 780 F.2d 1102, 1108 (4th Cir. 1985).  Indeed,

disclosure should be ordered only after finding that the

informant's testimony would be "highly relevant." Id.

The court does not intend at this time, in resolving the motion to suppress, to rely in any way upon the search warrant information, the drug courier information, or the frequent traveler information.  Rather, the source's relevance presently is sharply confined to a single point, namely, whether he or she may have witnessed the chase and apprehension of defendant and any remarks made by defendant after he was handcuffed.

The public interest is quite significant.  The source is a longstanding and reliable one with respect to the flow of illegal drugs into Charleston.  At the same time, it appears that the source may be a material witness, not simply a tipster, who watched as law enforcement pursued and apprehended defendant. While it is questionable whether the source will have any information determinative of the outcome of the motion to suppress, the court recognizes that the source may be helpful to the defense.

It seems apparent that the privilege must give way in light of defense counsel's need to at least interview the source to ascertain if he or she has material information along the lines previously mentioned.  In an effort to accommodate the public interest to the extent reasonably possible, however, the

7

court deems it appropriate to restrict, at least at this time,
the disclosure of the source's identity to the defendant as
opposed to his lawyer.

        Our court of appeals has recognized that, under some
circumstances, defense counsel may properly be instructed to not
communicate with his or her client as to certain matters.  In
United States v. Moussaoui, 591 F.3d 263, 289 (4th Cir. 2010), it
was observed as follows:

> The right to communicate with counsel at any point in
> the proceedings is not absolute. "[I]n certain contexts
> there can be an important need to protect a
> countervailing interest, which may justify a
> restriction on defendant's ability to consult with his
> attorney if the restriction is carefully tailored and
> limited."

Id. (citation omitted).  Immediately following this observation,
the court of appeals cited Morgan v. Bennett, 204 F.3d 360, 368
(2d Cir. 2000), and United States v. Herrero, 893 F.2d 1512,
1526-27 (7th Cir. 1990), both of which cases barred defense
counsel from disclosing to the client the identity of law
enforcement cooperators.  Other cases espouse the same or similar
principles.  See, e.g., McKinney v. Meese, 831 F.2d 728, 731 (7th
Cir. 1987) (observing that district court may grant counsel for
inmate access to in camera review of material documenting
confidential informant's credibility provided that the court

first "consider the risk that counsel will relay the information
to the inmate" and then "decide whether any or part of the in
camera material may be made available without endangering the
sources of that information . . . .") (internal quotation marks
omitted)); United States v. Anderson, 509 F.2d 724, 729-30 (9th
Cir. 1974) ("In striking . . . [a] balance the trial judge. . .
can conduct an in camera hearing to which the defense counsel,
but not the defendant, is admitted.  The defense counsel could
then be permitted to participate in the in camera proceedings and
to cross-examine the in camera witness or witnesses.  When
defense counsel has been admitted to the in camera hearing for
this limited purpose, the district court can and should, when
appropriate, place defense counsel under enforceable orders
against unwarranted disclosure of the evidence that he has
heard."); see also, e.g., Paul F. Rothstein & Susan W. Crump,
Federal Testimonial Privileges § 7:13 (2nd ed. elec. 2011) ("If a
substantial question arises as to whether or not the informer can
supply material information to the case, the court may require
the government to show facts that are relevant to that issue or
to produce the informer for an examination in camera. . . .
Courts may exclude counsel at such a proceeding, although courts
may also permit, in the exercise of discretion, opposing counsel
to assist and participate in the conduct of an in camera

proceeding under a pledge of secrecy."). But see, e.g., United States v. Eniola, 893 F.2d 383, 387 (D.C. Cir. 1990); United States v. De La Rosa-Contreras, 859 F. Supp. 388 (D. Ariz. 1994).

Under the circumstances, the court concludes that it is appropriate at this juncture to shield from the defendant and all other persons, except for defendant's lawyer, the source's identity, contact information, and the substance resulting from any interview that defense counsel undertakes of the source.  It may be the case that an interview of the source by defense counsel will yield no helpful information.  In that event, disclosure of the source's identity would have been in vain but for this shielding effort and unnecessarily harmful to the public interest.  If the source reveals material information to defense counsel, however, the court will reconsider the matter of disclosure of identity information and the substance of the revelation to defendant upon proper motion.

Based upon the foregoing, it is ORDERED that defendant's motion to compel be, and it hereby is, granted to the extent set forth supra.  It is further ORDERED that the United States, no later than August 9, 2011, be directed to elect between revealing the source's identity and contact information to defense counsel and the court alone, and no other person, with such disclosure filed under seal, or, instead, move for voluntary

10

dismissal of the indictment on the public record.  If defense counsel thereafter notifies the court that the defense proposes to use the identity in open court on a matter material to the resolution of the motion to suppress, the United States will be given the opportunity for a similar election.

The motion to suppress will be held in abeyance pending the election and, if circumstances require, the outcome of any interview defense counsel wishes to undertake of the source should the United States elect to reveal the aforementioned information.  If revealed, defense counsel will be required to interview the source no later than August 16, 2011, with a notice to the court no later than August 17, 2011, respecting whether counsel wishes to expand the record accompanying the motion to suppress.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: August 2, 2011

John T. Copenhaver, Jr.
United States District Judge

11